2026 IL App (1st) 250516
No. 1-25-0516

FIFTH DIVISION
May 22, 2026

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| PEPPER CONSTRUCTION COMPANY, an Illinois Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff and Counterdefendant-Appellee, | ) ) ) ) | |
| v. | ) ) | No. 22 L 2811 |
| PALMOLIVE TOWER CONDOMINIUMS, LLC, an Illinois Limited Liability Company; ABN AMRO MORTGAGE CORPORATION, INC.; ALZENSTEIN, NEAL; ALMEIDA, JILL F.; ALMEIDA, RICHARD J.; AMERICAN BROKERS CONDUIT, f/k/a American Home Mortgage Company; ANNING-JOHNSON COMPANY; ANTARES IRON AND COPPER, INC.; ASHER BROTHERS COMPANY, INC., ATG TRUST COMPANY, as Trustee of Trust Agreement No. 10261 Dated 7/25/2006; BALLAS, PETER G., as Trustee of the Peter G. Ballas Revocable Trust Dated 5/23/2003; BANK OF AMERICA; BANK UNITED FSB; BARRETT, MARILYN E.; BARRY, MARCELLA; BARRY, ROBERT; BARRY THOMAS PLUMBING, INC.; BARSANTI WOODWORK CORPORATION; BERGDAHL, LINDA J.; BERGLUND CONSTRUCTION; BERNHARD WOODWORKS, LTD.; BIG BEAVER AND CROOKS, LTD., LLC; BIRKEL, MARTIN P.; BLAZER, JUDITH E. AND HENRY E. FULDNER, as Trustees of the Judith E. Blazer Living Trust Dated 10/21/1996; BOOTH, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | The Honorable James E. Hanlon, Jr., Judge, presiding. |

LAURENCE; BOOTH, PATRICIA; BOURBON)
 TILE AND MARBLE, INC.; BOYSEN,        )
ROWENA; BREAK THRU ENTERPRISES,    )
INC.; BUCKLEY, MORTIMER; BURKARD,   )
JEFFREY; BYNOE, LINDA WALKER;         )
BYNOE, PETER; CABRERA, MARIA;         )
CALKINS, CATHERINE B.; CALKINS III,    )
RUSSELL W.; CAMINO MODULAR           )
SYSTEMS USA, INC.; CAPITOL GLASS;     )
CHARLES SCHWAB BANK; CHICAGO        )
BANCORP INC.; CHICAGO FINANCIAL      )
SERVICES, INC.; CHICAGO TITLE AND     )
TRUST COMPANY; CITIBANK; CITI         )
MORTGAGE, INC.; COLCO SERVICES,      )
INC.; COLE TAYLOR BANK; COLUMN       )
FINANCIAL, INC.; COMBS, MARK E.;       )
CONNAUGHTON, JAMES T.;               )
CONNELLAN, JOHN; COUNTRYWIDE        )
HOME LOAN; CREATIVE INDUSTRIES       )
TERRAZZO; CUSTOM STAINLESS; DAW,    )
JAMES F.; DELANEY, MADELEINE;         )
DELEERS MILLWORK INC.; DELEEUW,      )
DEBRA ANNE SYLVAN; DELEEUW,          )
ROBERT; DEMIRJIAN, CHARLES;          )
DIMAURO, ALEXANDER; DOUGLAS IRON )
WORKS, INC.; DP 159e. WALTON, LLC,     )
R.A.; DRAPER AND KRAMER MORTGAGE;)
EARHART, BARRIE, as Trustee of the Barrie  )
M. Earhart Revocable Trust Dated 2/24/2003;  )
ELSMAN, CYNTHIA; ELSMAN JR, JAMES)
L.; ELSMAN III, JAMES L.; ELSMAN,      )
JANICE M.; EZTECH MANUFACTURING,   )
INC.; FEENEY, LOUISE; FIRST FRANKLIN; )
FIRST MIDWEST BANK; FLOORING         )
RESOURCES CORPORATION; THE          )
GASLIGHT COMPANIES; GEORGES,         )
CHRISTOS; GEORGES, MARIA; GEORGIS,  )
MARY LOU; GERMONT, JOY; GLAROS,     )
WILLIS H.; GLICKMAN, ROSS B.;          )
GLICKMAN, SUZANNE A.; GRAND          )
APPLIANCE AND TV; GRUNBERG, TED;    )
GURTZ ELECTRIC COMPANY; HARRIS      )
NA; HAWKINS, JAMES B.; HAWKINS,      )
MARY PAT; HENKEL, FRANCES C.;         )
HENKEL, MICHAEL C.; HILL              )
MECHANICAL CORPORATION;             )

2

HOURIHANE, KRISTINA K.; HOURIHANE, )
PATRICK D.; INTERNATIONAL MARBLE )
AND GRANITE SUPPLY, INC.; J. )
KAPCHECK AND COMPANY; JOHN )
CARETTI AND COMPANY; JOHNSTONE, )
LISA A.; JOHNSTONE, MICHAEL B.; )
JONES, HERBERT A.; JONES, KIMBERLY )
M.; JP MORGAN CHASE BANK; K7K IRON )
WORKS, INC.; KEHOE, THOMAS G.; )
LaFORCE HARDWARE AND )
MANUFACTURING COMPANY/ )
WISCONSIN; LANDIS, GREGORY J., as )
Trustee of the Gregory J. Landis Declaration of )
Trust Dated 9/14/1998; LECOQUE, JAY K.; )
LILIE, HAROLD J.; LOEFFLER, KELLY L.; )
LOOMIS, BRIAN S.; LYN-DEN, INC.; )
MAKAM, PADMINI S.; MAKAM, )
SATYAPRAKASH N.; MANSON, JULIE N.; )
ARIA MAZER LIVING TRUST, Dated )
9/23/2005; RICK MAZER LIVING TRUST )
Dated 9/23/2005; MAZER CONSTRUCTION )
COMPANY; McGRATH, KRISTINA; )
McGRATH, MICHAEL; MENENDEZ, )
ALICIA S.; MIDWEST WOODWORK AND )
VENEERING, INC.; MILLER, SUSAN H.; MK)
INDUSTRIES, INC.; MOORE, HELEN; )
MOORE, WAYNE; MORTGAGE )
ELECTRONIC REGISTRATION; MURAD, )
NADIA; MABS INVESTMENTS, LLC, R.A.; )
NATIONAL CITY MORTGAGE; NATIONAL )
ELECTRICAL BENEFIT FUND; NAYER, )
RAJEEV; NAYER, RITU; NORTHSTAR FIRE)
PROTECTION; MARLA NYBERG )
DECLARATION OF TRUST Dated 12/1/1998; )
OAK BROOK BANK; O'CONNELL, )
CORMAC; PALMOLIVE BUILDING BASE, )
LLC; PARK NATIONAL BANK; PAPPAS, )
NICHOLAS J.; PARENTI AND RAFAELLI )
LTD.; PEDERSEN, MYRNA E.; PERRY, )
FRANK S., as Trustee of the Frank S. Perry )
Trust Dated 1/17/2002; PIMENTEL, GEORGE )
B.; PIMENTEL, ZANA; POLIFORM; PRINCE,)
CYNTHIA; PROCHNOW, DOUGLAS L.; )
RAMPY; RESNICK, NANCY; RESNICK, )
PHILLIP; ROSEN, BRIAN; ROSS, MARIA; )

No. 1-25-0516

ROSS, RICHARD; ROZRAN, DAWN F.; )
ROZRAN, JACK L.; RUBENSTEIN, )
MARC A.; BETH S. RUBIN REVOCABLE )
TRUST 3/7/2007; MORRONI SARDO, INES, )
Trustee of the Ines Morroni Sardo Trust Dated )
12/17/2004; SHIMER, ROBERT J.; )
SHOWERWORKS; SHUTTER, JENNIFER M.;)
SHUTTER, JON D.; SIMON, MARCY, as )
Trustee of the Marcy Simon Trust Dated )
9/19/1999; SPECH, LARRY; SPRECHER, )
JEFFREY C.; STEVENSON, CHASE; )
STEVENSON, JOHN; STEWART, JAY S.; )
STEWART, JUDITH D.; STRINGFELLOW, )
JAMES; THE NORTHERN TRUST )
COMPANY OF ILLINOIS; THE PRIVATE )
BANK MORTGAGE COMPANY; TIDY )
INTERNATIONAL; TIRAPELLI, RONALD; )
TRAVERS, SUZANNE; TRINITY ROOFING )
SERVICES, INC.; THE VAV2005 TRUST )
Dated 8/8/2005; VORWALLER, AVA M.; )
VORWALLER, GREGORY S.; WALLACK, )
LEWIS; WASHINGTON MUTUAL BANK; )
WEAVER, AMY J.; WEAVER, RICHARD G.; )
WELLS FARGO BANK; WEINER, )
BARBARA A.; WILLMOT, PETER S.; )
WITTENMYER, ERIC; WOODFIELD )
PLANNING CORPORATION; NONRECORD )
CLAIMANTS; and BOURBON MARBLE, )
INC., )
)
  Defendants )
)
(Bourbon Marble, Inc., an Illinois Corporation, )
Counterplaintiff-Appellant). )

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment and opinion.

4

**OPINION**

¶ 1        This is the parties' fourth appeal arising from a construction project gone bad, where the dispute has been going on for years, with numerous prior opinions and orders.[1] *E.g.*, *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2024 IL App (1st) 221319, ¶ 1 (*Pepper III*). As was the issue in *Pepper III*, the issues today are again about attorney fees. We ended our last opinion, noting:

> "We decline to remand for further proceedings, because at some point the escalating fees must come to an end. Both parties knew the additional costs they were facing by appealing, and they both willingly accepted that risk, rather than accepting the trial court's decision. The parties are, of course, free to rack up more fees by filing a petition for leave to appeal [PLA]" *Pepper III*, 2024 IL App (1st) 221319, ¶ 27.

Although the parties did not file a PLA in the supreme court, Bourbon Marble Inc. (Bourbon) did file supplementary proceedings in the trial court, which are the subject of this fourth appeal.

¶ 2        Specifically, Bourbon appeals two written orders entered by the trial court on February 27, 2025, in which the court (1) granted the motion by Pepper Construction Co. (Pepper) to quash Bourbon's citations to discover Pepper's assets and (2) denied Bourbon's third petition for attorney fees. Bourbon sought to discover Pepper's assets in order to recover post-judgment interest that Bourbon claimed was still owed from a prior fee award. The parties agree that a *de novo* standard of review applies. *Inman v. Howe Freightways, Inc.*, 2022 IL App (1st) 210274, ¶ 77. For the reasons that we explain below, we can find no error and therefore affirm.

---

[1]This court previously observed that "[t]he project was rife with problems," and the parties stopped working on it 17 years ago, back in 2007. *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2021 IL App (1st) 200753, ¶ 1 (*Pepper II*).

¶ 3                                    I. BACKGROUND

¶ 4                      A. Our First Two Opinions: *Pepper I* and *II*

¶ 5        The dispute between the parties spans years, and we previously recounted the factual

history in two of our prior opinions. *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754 (*Pepper I*); *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2021 IL App (1st) 200753, ¶ 3 (*Pepper II*) (noting "the long history of this case"). We incorporate these opinions here by reference and summarize them below.

¶ 6        This court's first opinion regarding the dispute between Pepper and Bourbon was *Pepper I*, 2016 IL App (1st) 142754. In that opinion, we observed that this was "a dispute between the general contractor for a construction project, [Pepper], and one of its subcontractors, [Bourbon]." *Pepper I*, 2016 IL App (1st) 142754, ¶ 1. We explained the dispute and its history as follows:

"Beginning in 2004, Pepper and Bourbon worked on an interior build-out of approximately 96 condominium units in a building owned by Palmolive Tower Condominiums, LLC (Palmolive), and located at 919 North Michigan Avenue in Chicago. At one point, disputes arose, and in March 2007, Pepper filed a demand for arbitration against Palmolive. The arbitration proceedings involved Palmolive, Pepper, and Bourbon, along with several other subcontractors of Pepper. The arbitration award was confirmed in the circuit court, and following a global settlement agreement, only issues between Pepper and Bourbon remained. Bourbon attempted to pursue damages against Pepper, but Pepper successfully contended at the summary judgment stage that Bourbon was judicially estopped from pursuing those damages. The remaining issues

were resolved at a bench trial, where Pepper was awarded $36,312 in backcharges." *Pepper I*, 2016 IL App (1st) 142754, ¶ 1.

¶ 7        The result of that first bench trial and its pretrial proceedings was the subject of the appeal in *Pepper I*. On appeal, this court reversed in part, affirmed in part, and remanded for further proceedings. *Pepper I*, 2016 IL App (1st) 142754, ¶ 100. In *Pepper I*, we found, first, that the trial court "improperly granted summary judgment to Pepper on the issue of judicial estoppel" and reversed that ruling. *Pepper I*, 2016 IL App (1st) 142754, ¶ 70. Pepper argued other potential grounds for barring Bourbon's claims, which this court did not find persuasive. *Pepper I*, 2016 IL App (1st) 142754, ¶¶ 72, 74-75, 81. Second, this court affirmed the trial court's order, entered on March 17, 2014, in which, after a bench trial, the trial court (1) entered judgment for Bourbon and against Pepper on Pepper's claim regarding shower floors and (2) found that Pepper proved that Bourbon had breached the subcontract, for which it awarded Pepper $36,312 in damages. *Pepper I*, 2016 IL App (1st) 142754, ¶¶ 55, 100. Lastly, this court observed that its reversal of summary judgment would necessitate further proceedings and, thus, consideration of attorney fees was premature at that time:

"Pepper and Bourbon also challenge the [trial] court's refusal to find either party as the prevailing party and award attorney fees. However, because our reversal of the summary judgment ruling on the basis of judicial estoppel will require further proceedings, a ruling on prevailing party status and fees would be premature. The trial court's denial of Bourbon's and Pepper's petitions for prevailing party status and fees is affirmed, but we do not preclude the parties from raising this issue after the final disposition of this case in the trial court." *Pepper I*, 2016 IL App (1st) 142754, ¶ 97.

¶ 8                On remand, "Bourbon pursued breach of contract and unjust enrichment claims against Pepper." *Pepper II*, 2021 IL App (1st) 200753, ¶ 1. After another bench trial, Bourbon prevailed on both of its claims, receiving $271,687.87 for its breach of contract claim and $400,131.92 for its unjust enrichment claim. *Pepper II*, 2021 IL App (1st) 200753, ¶ 1.

¶ 9                In addition, the trial court determined that Bourbon was the prevailing party and, thus, awarded Bourbon $3,657,984.08 in attorney fees and costs under the fee-shifting provision of the parties' contract. *Pepper II*, 2021 IL App (1st) 200753, ¶¶ 1, 56. On appeal, in *Pepper II*, this court observed that, while "[a] party is generally responsible for his own attorney fees, *** there is an exception where a contract, [such] as [the one] here, provides for an award of attorney fees." *Pepper II*, 2021 IL App (1st) 200753, ¶ 99. The parties' contract provided for an award of attorney fees, but only if the party could demonstrate it was the prevailing party. *Pepper III*, 2024 IL App (1st) 221319, ¶ 21. Thus, prevailing-party status was paramount to the recovery of attorney fees. *Pepper III*, 2024 IL App (1st) 221319, ¶ 22.

¶ 10                On appeal, in *Pepper II*, this court again affirmed in part, reversed in part, and remanded for further proceedings. *Pepper II*, 2021 IL App (1st) 200753, ¶ 1. We affirmed the trial court's judgment in favor of Bourbon on its breach of contract claim but reversed the trial court's judgment in favor of Bourbon on its unjust enrichment claim. *Pepper II*, 2021 IL App (1st) 200753, ¶ 140.

¶ 11                With respect to attorney fees, we found:

    "In light of our reversal of the judgment for Bourbon on its unjust enrichment claim, the trial court must consider whether Bourbon is still the prevailing party. The trial court is in a better position to weigh the various factors involved, including the relative

value and complexity of the issues presented and the amount of time the parties devoted to each issue." *Pepper II*, 2021 IL App (1st) 200753, ¶ 101.

We observed: "These are matters for the trial court acting in its discretion, based on the changed circumstances on remand." *Pepper II*, 2021 IL App (1st) 200753, ¶ 101. Thus, we remanded the matter back to the trial court in order for it to determine if Bourbon was still the prevailing party after our reversal on the unjust enrichment claim.

¶ 12                            B. *Pepper III*

¶ 13        On remand to the trial court, the matter was fully briefed, with each side claiming that it was the prevailing party. The trial court decided that Bourbon was the prevailing party, and it entered an order on July 28, 2022, awarding Bourbon $3,605,880.33 in attorney fees and costs.[2] This amount was approximately $50,000 less than the trial court's last award (prior to *Pepper II*), due to the reversal of the unjust enrichment claim. Although reduced, the current award was still, like the prior award, over $3 million.

¶ 14        The judge declined to "award either party fees incurred in connection with the appeal" in *Pepper II*. Subsequently, Bourbon filed a petition for additional fees and costs, specifically for attorney fees incurred (1) after the trial court's 2020 fee award but before Pepper's notice of appeal; (2) after remand but before the trial court's July 28, 2022, order; and (3) from July 28, 2022, through August 16, 2022. In an order entered October 5, 2022, the trial court stated that it "awards Bourbon all of the additional attorney fees it seeks in the sum [of] $116,204.35." The court remarked: "Although Pepper complains that its liability for attorney fees must end, it is the master of its own destiny."

---

[2]On October 5, 2022, the trial court entered an almost identical "corrected order," in which it also awarded Bourbon $3,605,880.33 in attorney fees and costs.

¶ 15        On October 6, 2022, the trial court entered an agreed order, in which the court found, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), that there was no just reason for delaying either the enforcement or the appeal of the court's order of July 28, 2022, as corrected on October 5, 2022, awarding $3,605,880.33 in attorney fees and costs to Bourbon, and the court's order of October 5, 2022, awarding an additional $116,204.35, in attorney fees and costs to Bourbon. Pepper filed a timely notice of appeal on October 14, 2022. A few days later, Bourbon filed a notice of cross appeal on October 19, 2022, seeking even more money than the almost $4 million that it had been awarded.

¶ 16        On appeal, in *Pepper III*, this court affirmed the trial court's finding that Bourbon was the prevailing party and affirmed the trial court's award of fees. *Pepper III*, 2024 IL App (1st) 221319, ¶ 1. We declined both parties' requests to remand for further proceedings "because at some point the escalating fees must come to an end." *Pepper III*, 2024 IL App (1st) 221319, ¶ 27. We also denied Bourbon's cross-appeal. We noted that, on remand, Bourbon had "sought leave to plead, at the eleventh hour, a whole new cause of action." *Pepper III*, 2024 IL App (1st) 221319, ¶ 9 n.2. As such, we could find no abuse of discretion in the trial court's "denial of a new claim after more than a decade of litigation." *Pepper III*, 2024 IL App (1st) 221319, ¶ 9 n.2.

¶ 17                    C. Post-*Pepper III*

¶ 18        Our decision in *Pepper III* was entered March 22, 2024. It is undisputed that, on April 2, 2024, just a few days later, Pepper sent a wire to Bourbon for $4,283,621.04. The amount was for the two attorney-fee awards—entered on July 28, 2022, and October 5, 2022—plus Pepper's calculation of postjudgment interest:

        Amount Wired by Pepper on April 2, 2024

$3,605,880.33 Attorney Fee Award, entered July 28, 2022

+ 116,204.35 Attorney Fee Award, entered October 5, 2022

+ 561,536.36 Postjudgment Interest

$4,283,621.04 Total

¶ 19    Pepper explained its calculation of postjudgment interest as follows:

```
Fee Award  Award Date     } Days Bet.    Daily Interest
                          } Award & Payment  9% Interest Due
$3,605,880.33 July 28, 2022} 614 X 889.12= 545,920.40
                          }
$116,204.35 Oct. 5, 2022   }545 X 28.65= 131,820.30
                                         561,536.36
```

¶ 20    However, Bourbon claimed that it was owed an additional $717,520.78, on the ground that the interest on the first award should begin to accrue on May 12, 2020, rather than July 28, 2022. May 12, 2020, was the date of the trial court's first fee award, which we reviewed in *Pepper II* and which we sent back to the trial court for further consideration. Claiming that it was owed more, Bourbon served Pepper, on May 14, 2024, with a citation to discover assets, for the stated purpose of collecting the additional interest that Bourbon claimed it was owed. Pepper, for its part, responded on May 15, 2024, with a motion to quash the citation, on the ground that the judgment had been satisfied.

¶ 21    Bourbon also filed a third fee petition on April 18, 2024, seeking to recover an additional $236,946.87, for work done after the July 28, 2022, fee award, including the *Pepper III* appeal and the post-*Pepper III* supplementary proceedings. Bourbon argued that the citation that it served on Pepper gave the trial court jurisdiction to conduct supplementary proceedings regarding both its quest for more postjudgment interest and more attorney fees.

¶ 22    Granting Pepper's motion to quash, the trial court observed:

"Bourbon previously asked the trial court to amend its July 28, 2022, judgment to backdate it to May 12, 2020, but the court declined, stating that the proper calculation of post judgment interest was 'an issue for the judge handling the post-judgment relief in this case.' Ordered. Oct. 5, 2022, at p. 1. And so, it is."

¶ 23    The trial court noted that "[t]he date on which post judgment interest begins accruing after a modification of the award on appeal is determined in each case on its own unique facts." The trial court found that, in the case at bar, "the question of the prevailing party was essential to the awarding of fees," since only a prevailing party could recover attorney's fees under the contract at issue The court reasoned that, if the trial court on remand had determined that Bourbon was no longer the prevailing party, then Pepper would not have been liable to Bourbon for any fees. As a result, Pepper could have owed Bourbon nothing or millions. The trial court found:

> "That is enough for this Court to say that the appellate court's decision to remand the case to the trial court to determine the prevailing party issue means post judgment interest could not begin to accrue until the date [the trial judge] made his determination. That was July 28, 2022."

For these reasons, the trial court granted Pepper's motion to quash.

¶ 24    Denying Bourbon's third petition for more attorney fees, the trial court found:

> "[T]his Court takes the appellate court's refusal to remand the case for further proceedings as a bar to any more fee petition. But the appellate court did not rule out supplementary proceedings.
>
> In the absence of a remand, this Court would still have jurisdiction to hear a fee petition as part of supplementary proceedings to enforce a judgment. But here, there

12

are no supplementary proceedings (during which fee petitions could be brought.) This Court granted Pepper's motion to quash (in a Memorandum Opinion & Order also dated today) because the Court determined that Pepper satisfied the judgment before Bourbon served a Citation on it. That decision leaves no pending Citations that would give this Court jurisdiction. The net of these two circumstances means that no circuit court would have jurisdiction to hear Bourbon's Fee Petition. Consequently, Bourbon's Fee Petition must be denied."

¶ 25    On March 20, 2025, Bourbon filed a notice of appeal, appealing both of the trial court's February 27, 2025, orders which granted Pepper's motion to quash and denied Bourbon's third petition for more attorney's fees. This appeal followed.

¶ 26    II. ANALYSIS

¶ 27    As we noted above, Bourbon appeals two written orders entered by the trial court on February 27, 2025, in which the court (1) granted Pepper's motion to quash Bourbon's citations to discover Pepper's assets and (2) denied Bourbon's third petition for attorney fees. For the reasons discussed below, we affirm both of the trial court's orders.

¶ 28    A. Postjudgment Interest

¶ 29    The first issue on appeal concerns Bourbon's citations. The point of Bourbon's citations was to discover Pepper's assets, in order to recover post-judgment interest that Bourbon claimed was still owed on a prior fee award. As we observed above, the parties agree that a *de novo* standard of review applies. *Inman*, 2022 IL App (1st) 210274, ¶ 77 (the date from which interest begins to accrue is a question we review *de novo*).

¶ 30    Section 2-1303 of the Code of Civil Procedure provides that judgments recovered in any court shall draw interest at the rate of 9% per annum "from the date of the judgment until

satisfied." 735 ILCS 5/2-1303 (West 2024). To determine the date of judgment, both the trial court and Bourbon cited in support *Kramer v. Mt. Carmel Shelter Care Facility, Inc.*, 322 Ill. App. 3d 389 (2001) and *Phelps v. O'Malley*, 187 Ill. App. 3d 150 (1989).

¶ 31   *Kramer* observed that "delineating the specific date from which to measure the accrual of interest" is problematic when the "judgment *** has been partially or totally set aside or modified on appeal," which is what happened in the case at bar. *Kramer*, 322 Ill. App. 3d at 392. In every case, the date turns on that case's "own unique facts," focusing in particular on the questions that led up to the appeal. *Kramer*, 322 Ill. App. 3d at 392. "An award of interest on a money judgment requires that the amount of money owed is certain and that the judgment debtor enjoyed the improper use of the money during the period for which interest is to be awarded." *Kramer*, 322 Ill. App. 3d at 392-93. Thus, certainty and improper use are key issues.

¶ 32   The facts of *Kramer* illustrate the wisdom of the trial court's decision in our case. In *Kramer*, only a small portion of the judgment was challenged on appeal. The defendants had been ordered to pay back "all salaries and directors' fees" paid during a particular time period, but on appeal defendants challenged only the "pay back" of one salary. *Kramer*, 322 Ill. App. 3d at 391. As a result, the *Kramer* court found that prejudgment interest ran from the original pre-appeal date. *Kramer*, 322 Ill. App. 3d at 393. The *Kramer* court noted that judgment for plaintiffs was certain and what was left on remand was only a small "recalculation." *Kramer*, 322 Ill. App. 3d at 393 ("defendants' liability was settled, and our remand was nothing more than a simple recalculation").

¶ 33   By contrast, in the case at bar, judgment was far from "certain." On remand, when the trial court was told to determine who, if anyone, was the prevailing party, Pepper could have owed nothing or millions. The trial court's determination of who, if anyone, was the prevailing

party was the determination on which judgment turned. Without it, there was no judgment and, hence, no basis for prejudgment interest. As a result, *Kramer* leads us to find no fault with the trial court's decision.

¶ 34    Our review of *Phelps* does not change our conclusion. In *Phelps*, the appellate court affirmed the trial court's finding of liability but lowered the amount owed from $387,500 to $379,000. *Phelps*, 187 Ill. App. 3d at 151-52. The appellate court remanded to the trial court only for the purpose of entering judgment for the somewhat smaller amount. *Phelps*, 187 Ill. App. 3d at 152. On remand, the trial court entered the amount, as directed, and calculated prejudgment interest from the date of its original order of liability. *Phelps*, 187 Ill. App. 3d at 151-52. On appeal, defendant argued that the prejudgment interest should run from the date that the trial court entered the slightly revised amount ordered by the appellate court. *Phelps*, 187 Ill. App. 3d at 156. Rejecting his argument, the appellate court observed, first, that it "[was] not so clear what effect the appellate court's decision should have on the accrual of this interest." *Phelps*, 187 Ill. App. 3d at 156. The appellate court described "the specific facts of this case" as "where the appellate court affirmed the finding of liability but set damages at a lower amount." *Phelps*, 187 Ill. App. 3d at 156. This is not the question before us. In the case at bar, the appellate court did *not* affirm the finding of liability for attorney's fees, but rather remanded to permit the trial court to make that determination. *Contra Phelps*, 187 Ill. App. 3d at 157 (where "the only action necessary in the trial court is compliance with" the monetary award set by the appellate court, "interest on the award should accrue from the original judgment date"). Thus, consistent with *Phelps*, prejudgment interest here runs from the trial court's finding of liability.

¶ 35        For the foregoing reasons, we affirm the trial court's order granting Pepper's motion to quash Bourbon's citations to discover Pepper's assets.

¶ 36                    B. Bourbon's Third Petition for Attorney Fees

¶ 37        The second issue is whether the trial court erred in denying Bourbon's third fee petition on the ground that it lacked jurisdiction. Normally, fee decisions are reviewed for an abuse of discretion. *Pepper III*, 2024 IL App (1st) 2211319, ¶ 23 ("Whether to award attorney fees and what amount to award is left to the sound discretion of the trial court."); *Pepper II*, 2021 IL App (1st) 200753, ¶ 100. However, the parties agree that the standard of review is *de novo*, where the trial court denied the petition due to the termination of the underlying case. *People v. Morgan*, 2025 IL 130626, ¶ 22 ("whether the circuit court has jurisdiction over a party or case is a legal question and, therefore, is reviewed *de novo*").

¶ 38        Bourbon presented its fee petition as a supplementary proceeding, for the purpose of enforcing a judgment which it claimed was not fully paid. However, as both the trial court and this court have found, Pepper had, in fact, satisfied the judgment *before* Bourbon had served its citations. A supplementary proceeding terminates upon "satisfaction of the judgment." Ill. S. Ct. R. 277(f) (eff. Oct. 1, 2021). Thus, there were no supplementary proceedings to be held.

¶ 39        Further, in our prior opinion, we stated: "Both parties in their requests for relief seek, among other things, a remand for further proceedings. We decline to remand for further proceedings, because at some point the escalating fees must come to an end." *Pepper III*, 2024 IL App (1st) 221319, ¶ 27. We observed: "The parties are, of course, free to rack up more fees by filing a [PLA]." *Pepper III*, 2024 IL App (1st) 221319, ¶ 27. However, after reading these lines, neither party exercised its right to file either a petition for rehearing or a PLA, and so the litigation came to an end—or should have. *City of Chicago v. Eychaner*, 2020 IL App (1st)

191053, ¶ 33 ("A dissatisfied party may file a petition for rehearing or petition for leave to appeal to the supreme court."). As we previously stressed, "[a]t some point, all things must come to an end, including this litigation." *Pepper III*, 2024 IL App (1st) 221319, ¶ 26.

¶ 40　　　　In *Pepper III*, we observed: "In this case, it is hard for Bourbon to argue that the trial court abused its discretion when the court found that Bourbon was the prevailing party and gave it close to everything it asked for—including an eleventh hour 'hail-Mary-pass' petition for additional fees." *Pepper III*, 2024 IL App (1st) 221319, ¶ 24. After reading our finding that the litigation was ending, but for a possible PLA, Bourbon could have filed a petition for rehearing, asking us to reconsider that finding and to remand for the limited purpose of filing another fee petition. However, it chose not to do so. Without a petition for rehearing or leave to appeal, after our very clear statement that the litigation had otherwise come to an end, Bourbon cannot be heard to complain about the trial court's decision not to review more fee petitions. *Eychaner*, 2020 IL App (1st) 191053, ¶ 33 ("[t]he law-of-the-case doctrine provides that issues presented and disposed of in an earlier appeal are binding and will control in the circuit court on remand, as well as the appellate court in a later appeal").

¶ 41　　　　As an aside, we note that Bourbon misstated the facts of the case in its argument regarding the fee petition. In its appellate brief, Bourbon argued for jurisdiction, stating that "while *Pepper III* was pending, other proceedings occurred in the circuit court, including Bourbon filing its third petition on April 18, 2024." However, as we noted above, this court issued its decision in *Pepper III* on March 22, 2024. Thus, this argument is factually mistaken.

¶ 42　　　　In sum, the trial court did not err in refusing to consider a free-standing fee petition, where neither a supplementary proceeding nor the underlying case were still pending.

¶ 43                                  III. CONCLUSION

¶ 44          For all the foregoing reasons, we affirm the two written orders entered by the trial court

on February 27, 2025, in which the court (1) granted Pepper's motion to quash Bourbon's

citations to discover Pepper's assets as the judgment had been fully satisfied and (2) denied

Bourbon's third petition for attorney fees for lack of jurisdiction. Finding no error by the trial

court, we affirm.

¶ 45          Affirmed.

---

*Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2026 IL App (1st)
250516

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-L-2811; the Hon. James E. Hanlon Jr., Judge, presiding. |
| **Attorneys for Appellant:** | Ethan E. Trull, Keith E. Edeus, and Seth A. Horvath, of Nixon Peabody LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Gino L. DiVito, John M. Fitzgerald, and Ashley Crettol Insalaco, of Tabet DiVito & Rothstein LLC, of Chicago, for appellee. |